☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.    22-856M(NJ) |
| Seven (7) smartphones, (Devices A - G) fully | ) | **Matter No.: 2022R00055** |
| described in Attachment A | ) | |
| | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A. Over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     3/10/22     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to         Honorable Nancy Joseph         .
                                                                                      *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      2/24/22  10:25 am                    _____
                                                                                      *Judge's signature*

City and state:      Milwaukee, WI                         Hon. Nancy Joseph, U.S. Magistrate Judge
                                                                                      *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

   I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched is:

a)  A black LG touchscreen cellphone, with cracked screen, with an exterior ID # GPLGL355DCGBZNFL355DL ("Device A");

b)  A black Samsung touchscreen cellphone, with pink phone case and shattered screen (Device B");

c)  A Samsung smartphone, with cracked screen, with IMEI: 355403130674085 ("Device C");

d)  A black Android tablet, model K92, with serial # 320184590083. ("Device D");

e)  A Samsung smartphone with IMEI: 353929592364759 ("Device E");

f)  A Wiko smartphone, model U307AS, with IMEI: 356818682675710 ("Device F");

g)  An Alcatel smartphone, model 5002L, with IMEI: 354302111111490 ("Device G").


Devices A, B, C, D, E, F and G are currently in the custody of the ATF.


This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## <u>ATTACHMENT B</u>

All records on the Devices described in Attachment A that relate to violations for evidence of violations of Title 18, United States Code, Section 1591 (Sex Trafficking by Force, Fraud, and Coercion); Title 18, United States Code, Section 844(i) – use of fire to damage a building affecting interstate commerce; Title 18, United States Code, 844(h) – use of fire in furtherance of another Federal crime (sex trafficking) to include:

a. The existence, scope, nature, and overt acts in furtherance of the conspiracy and the identity of any co-conspirators;

b. Any information commonly associated with use for commercial sexual activity;

c. Any notes, documents, records, or correspondence, in any format concerning communications between individuals about commercial sex acts or sex trafficking, or advertisements for the same, such as on Skipthegames.com, Backpage.com, and similar websites;

d. Any financial records, including but not limited to ledgers, account books, appointment books, tax returns, tax return information, checks, checkbooks, bank statements, loan records, receipts, bills, invoices, credit card receipts, contracts, leases, and related correspondence in digital form;

e. Indicia of firearms or firearm violations;

f. Indicia of unlawful possession, use, or distribution of controlled substances, including but not limited to paraphernalia and evidence known to be associated with drug trafficking and/or drug possession;

g. Evidence of who used, owned, or controlled the cell phone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

h. Material used in manufacturing suspected incendiary devices (Molotov cocktails), namely Stewart's Orange n' Cream Soda glass bottles, gasoline containers, and cloth material that appears torn;

a. The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between the suspect and others related to the relevant offense conduct in the above-listed crimes; and

b. Evidence indicating the device user's state of mind as it relates to the crime under investigation.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>)<br>Seven (7) smartphones, (Devices A - G) fully described )<br>in Attachment A ) | Case No. 22-856M(NJ)<br>**Matter No.: 2022R00055** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. Over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C §§ 844(i); 1591(a)(1) | Arson and Sex Trafficking by Force, Fraud and Coercion; |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Digitally signed by ALEXIS KRUSIC (Affiliate)
DN: c=US, o=U.S. Government, ou=Dept of Justice, ou=ATF,
0.9.2342.19200300.100.1.1=15001003962776,
cn=ALEXIS KRUSIC (Affiliate)
Date: 2022.02.23 16:30:23 -06'00'

*Applicant's signature*

Special Agent Alexis Krusic, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date: 2/24/22

*Judge's signature*

City and state: Milwaukee, WI

Hon. Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Alexis Krusic, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION</u>**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— electronic devices and supplemental examinations of electronically stored information previously extracted from electronic devices—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      On February 18, 2022, investigators from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) conducted a consent search of an apartment complex unit, located at 555 S Layton Boulevard #206, Milwaukee, WI. The sole occupant on the lease, L.S., relayed that Bobby L MCNEIL (M/B, 10/18/79) stays in her living room occasionally, but does not pay rent and is not on the lease. Upon United States Marshal Service (USMS) entry, MCNEIL was arrested in the living room of the apartment and transported to the Milwaukee County Jail by a Milwaukee County Sheriff's Office patrol squad.

3.      Located during the consent search was a black LG cell phone with touch screen (with cracked screen) with an exterior identifying number of GPLGL355DCGBZNFL355DL (Device A) on the living room table in the unit. L.S. relayed that it was not her cellphone.

4.      Located in the bedroom of L.S. in her closet on a shelf was a black Samsung cell phone with touch screen with a pink phone case (Device B), with a shattered screen, was located inside of a black plastic bag. L.S. relayed that she didn't know whose cellphone that was. There was no exterior identifying marks on the cell phone.

5.      On February 18, 2022, investigators from the ATF executed a search warrant at 2600 W National Avenue #604. The unit was a one bedroom. The victim, Y.O.R. relayed to investigators that she and MCNEIL stayed between 555 S Layton Boulevard #206 and 2600 W National Avenue #604. Y.O.R. stated that 2600 W National Avenue was one of the two locations that she was sex trafficked from regularly. Y.O.R. also relayed that MCNEIL kept his belongings in the bedroom at 2600 W National Avenue. This information was verified via consent search of 555 S Layton Boulevard, which had no male belongings or clothing located inside L.S.'s residence aside from MCNEIL's black jacket in the living room where the identifiers were located. MCNEIL was known to have multiple cell phones per Y.O.R, but only one cell phone recovered from 555 S Layton Boulevard was thought to be MCNEIL's. The other phone recovered from 555 S Layton Boulevard is believed to be Y.O.R's [cell phone with the pink case, not L.S.'s]. Video from 2600 W National Avenue showed MCNEIL and Y.O.R. leave the location at 12:36 am and return at 2:43 am [CST] on February 1, 2022. Per housing authority Officer J.S. who regularly patrols 2600 W National Avenue, stated that #604 is known for prostitutes and unauthorized tenants, resulting in calls for service with security.

6.      The warrant authorized 'Cameras capable of recording pictures and/or video and their storage, hardware/devices including but not limited to SD Cards, Memory Sticks, USB drives, CD ROMS, Cassette Tapes, VHS Tapes, DVDs, and external hard drives, Computers, cell phones, tablets, or storage media used as a means to or assist in obtaining the means of committing the violations described above. For any computer, cell phone, tablet, or storage medium and any computer or storage medium that contains or in which is stored records or information.

2

7.      Located during the search warrant at 2600 W National Avenue #604 on the living room table was a Samsung smartphone with a cracked screen with IMEI # 355403130674085 (Device C).

8.      Located in a closet in the kitchen was a black Android tablet model K92 with serial # 320184590083 (Device D).

9.      Located in the bedroom dresser was a Samsung smartphone with IMEI # 353929592364759 (Device E).

10.     Located in another bedroom dresser was a Wiko smartphone model U307AS with IMEI # 356818682675710 (Device F).

11.     Also located in the bedroom dresser drawer, an Alcatel smartphone model 5002L with IMEI # 354302111111490 (Device G).

12.     The Government requests to examine Devices A, B, C, D, E, F, and G for electronically stored information related to an ongoing investigation into Bobby L MCNEIL, for evidence of violations of Title 18, United States Code, Section 1591 (Sex Trafficking by Force, Fraud, and Coercion); Title 18, United States Code, Section 844(i) – use of fire to damage a building affecting interstate commerce; Title 18, United States Code, 844(h) – use of fire in furtherance of another Federal crime (sex trafficking)..

## AGENT BACKGROUND

13.     I am a Task Force Officer (TFO) of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee I Field Office. I am a Detective out of the Criminal Investigations Division with the Milwaukee County Sheriff's Office (MCSO) since 2020. I have been employed with MCSO since January of 2016 and a TFO since March of 2020.  My duties as a TFO with ATF include investigating

3

alleged violations of the federal firearms, explosives, and arson statutes. My duties with MCSO include investigating state violations of all criminal offenses to include human trafficking.

14.     I have completed approximately 920 hours/6 months of training at the Milwaukee County Sheriff's Office Training Academy through the Wisconsin Law Enforcement Standards Bureau.  That training included various legal courses related to Constitutional Law as well as search and seizure authority.  Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection.  I have experience with investigations into commercial arsons and criminal damage to property. I have read reports and worked with other officers/agents in complex investigations where I know that criminals put information on social media platforms to convey a message to groups of people and use their cellphones to communicate with individuals about the crime(s) they have committed to include before, during and after the incident.

15.     I have been part of MCSO's Bomb Squad Unit since 2019 and have taken part in multiple explosive investigations and disposal of devices. I completed the Federal Bureau of Investigation's Hazardous Devices School, 5-week certification program, to become a certified bomb technician.

16.     I received my bachelor's degree from the University of Wisconsin-Milwaukee in Criminal Justice with a specialty in Crime Analysis in 2015.

17.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

18.     I have participated in multiple arson investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these computers, cellular phones, cameras, and other

4

digital storage devices. This electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators.

19.     I am familiar with computers, cellular devices, pagers, and other electronic media or electronic storage devices and their uses by targets to communicate with co-conspirators and others. These devices often contain evidence of illegal activities in the form of communication records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know targets take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, and their drug proceeds. These targets usually maintain these photographs or videos on computers, cellular devices, and other electronic media or electronic storage devices.

20.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

21.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of violations of  Title 18, United States Code, Section 1591 (Sex Trafficking by Force, Fraud, and Coercion); Title 18, United States Code, Section 844(i) – use of fire to damage a building affecting interstate commerce; Title 18, United States Code, 844(h) – use of fire in furtherance of another Federal crime (sex trafficking) committed by Bobby L MCNEIL (M/B, 10/18/79), and others, and that there is also probable

5

cause to search Devices A, B, C, D, E, F, and G as described below and in Attachment A, for evidence of these crimes, as described in Attachment B.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

22.     The property to be searched are the following:

a.   A black LG touchscreen cellphone, with cracked screen, with an exterior ID # GPLGL355DCGBZNFL355DL ("Device A");

b.   A black Samsung touchscreen cellphone, with pink phone case and shattered screen (Device B");

c.   A Samsung smartphone, with cracked screen, with IMEI: 355403130674085 ("Device C");

d.   A black Android tablet, model K92, with serial # 320184590083. ("Device D");

e.   A Samsung smartphone with IMEI: 353929592364759 ("Device E");

f.   A Wiko smartphone, model U307AS, with IMEI: 356818682675710 ("Device F");

g.   An Alcatel smartphone, model 5002L, with IMEI: 354302111111490 ("Device G").

23.     Devices A, B, C, D, E, F and G are currently in the custody of the ATF.

## PROBABLE CAUSE

24.     On February 1, 2022, at approximately 2:30AM, fire damaged a residential rental property located at 1532 South 21st Street, Milwaukee, Wisconsin. Occupants of the residence woke to the sound of breaking glass and discovered a kitchen window broken and a fire burning by a nearby glass bottle on the floor. An occupant of the home, M.V., extinguished the fire. M.V. then exited the home and discovered a second glass bottle outside on the ground that contained liquid and there was a rag sticking out of it. The Milwaukee Police Department subsequently responded and documented the fire under incident #22-032-0025. The Milwaukee Police Department collected the suspected incendiary devices, Molotov cocktails, for laboratory analysis. The two

6

recovered glass bottles were both Stewart's Orange n' Cream soda bottles.

25.      An occupant of the residence, E.T, stated he suspected the ex-boyfriend of
Y.O.R. was responsible for the fire. E.T. explained that he had allowed Y.O.R. to stay at
his residence and Y.O.R. had been recently harassed and beaten by a black male E.T.
knew only as "Cedric Robinson". E.T. further stated that Y.O.R. was a prostitute that he
had befriended and E.T. tried to help Y.O.R. get out of prostitution. E.T. later told ATF
that he believed Cedric Robinson was a pimp to Y.O.R. because E.T. knew her to be a
prostitute and Y.O.R. told E.T. that Robinson would beat her if she didn't give Robinson
money she owed to him. E.T. also stated that Robinson had been harassing Y.O.R.
leading up to the day of the fire.

26.      ATF subsequently interviewed E.T. on February 2, 2022 and E.T. provided
the following information:

27.      E.T. stated he believed the ex-boyfriend and likely pimp to Y.O.R. was
responsible for the arson to his residence on February 1, 2022. E.T. stated he knew
Y.O.R.'s ex-boyfriend as a black male who she called "Cedric Robinson" and "King
Messiah". E.T. further stated that Robinson had a Facebook username of "Kingk
Kingk" [Facebook ID # 100075745935381]. E.T. also said Y.O.R. had used E.T.'s
cellphone on or about January 30, 2022, to access Y.O.R.'s Facebook account. E.T.
showed Agent Hankins Y.O.R.'s Facebook username as "Yarisel Ortiz" [Facebook ID
#100077369432639] with a profile picture that depicted her image. E.T. stated that he
was able to capture multiple screenshots of Y.O.R.'s Facebook communications with
"Kingk Kingk" while Y.O.R.'s Facebook account was open on his cellphone. E.T. sent
the Facebook screenshots to Agent Hankins' government cellphone and Agent Hankins

7

later inventoried those images.

28.     The Facebook screenshots provided by E.T. included an image of a black male sent by "Kingk Kingk" who E.T. stated was the black male he knew as Cedric Robinson aka "King Messiah". The image is depicted below. E.T. stated he had seen "Cedric Robinson" a couple times from a distance and the black male depicted below is consistent with the person he knew as Cedric Robinson.



*Facebook image of "Cedric Robinson" aka "King Messiah"*

29.     Below are images of screenshots captured by E.T. of communications sent from "Kingk Kingk" to Y.O.R. via Facebook Messenger. E.T. opined that some of the texts appeared to be inadvertent talk-to-text messages that were captured when Cedric

8

Robinson may have had his Facebook account listening while Robinson was talking. E.T. stated he was familiar with Facebook enough to know that it is possible to have Facebook capture spoken statements as text messages if that feature is enabled and the user forgets to close the application on his/her cellphone.





**Kingk**
Active Now

Oh she was going to the n***** spot right there on 20th and Greenfield okay yeah she be going to the n**** spot right there between Scott and Washington and on orchard right there on 21st yes so suck around the area n**** all morning hours and late night hours man absolutely

So she feeding all these sucker ass n****** money they ain't looking out for when she f***** up but fam I'm the one be looking out for you mean and she feeding these being faithful and dedicated and loyal to these n***** that ain't loyal to me it'll hurt my n***** and that's some sick ass s*** fam that's a sick man f***** man she told me m************

Aa



**Kingk**
Active Now

fam she give a f*** about these n****** dick chasing and with these trick ass n****** and all this s*** damn she ain't thinking about her loved ones at all you a man but it's sick it's all good you know if that is a matter of mother f****** time my n***** a matter of time a m*********** can't stay in the shadows forever damn and you know what's up folks you already know what's good you know what time it is with some gangsters money that's what a mother f****** stand on this s*** right here my n***** and

**Kingk is here now. Tap to start an audio call.**

vake
ey
nore

Aa



**Kingk**
Active Now

m*********** can't stay in the shadows forever damn and you know what's up folks you already know what's good you know what time it is with some gangsters money that's what a mother f****** stand on this s*** right here my n***** and this right here going to wake him up f*** all up cuz they going to feel sorry and more depressed about they m************ self once they see what unfold my n**** they're going to wish they never even perform the way they perform my n**** cuz purple preparations prevents all poor performances



30.     E.T. stated he interpreted the above Facebook messages as Cedric
Robinson searching for Y.O.R. and upset that Y.O.R. was hiding from him. E.T. also
stated he took it as a threat when Cedric Robinson referenced that people were
impacting a "gangsters money" and were going to regret it. E.T. further said the

13

reference of "she" (Y.O.R.) being at the house on 21st and Orchard is a reference to
Y.O.R.'s house at 1532 South 21st Street.

31.     On February 3, 2022, ATF conducted a second interview of E.T., at which
time the following information was provided:

32.     E.T. stated he first met Y.O.R. when he stopped to help her after he saw
her hit by a car while riding her bike. E.T. said he and Y.O.R. started a friendship and
he eventually learned she was a prostitute who wanted to leave her life situation. E.T.
said Y.O.R. would frequently say she wanted to get away from "Cedric Robinson", who
E.T. believed to be her pimp. E.T. stated that Y.O.R. had confided that Robinson had
wanted to get professional photos of Y.O.R. in December 2021 so that Robinson could
advertise Y.O.R. on the internet for prostitution. E.T. said he believed that Robinson has
kept Y.O.R. addicted to drugs so it is easier to prostitute her. E.T. later said Y.O.R. told
E.T. that Robinson would give Y.O.R. heroin and crack, and then Y.O.R. owed Robinson
money. E.T further said Y.O.R. told him that a large portion of her prostitution money
is given to Robinson. E.T. also said that Y.O.R. told him that she has been with
Robinson for about 10 years, since she was 16.

33.     E.T. said that he also goes by the nickname "Jimmy" and Robinson knows
E.T. as Jimmy.

34.     E.T. said Y.O.R. goes by the nicknames "Yaya" and "Yari". E.T. also said
Y.O.R. used to have the cellphone number (262) 595-9013 until late December 2021. E.T.
stated Y.O.R. no longer has her own cellphone.

35.     E.T. had previously provided screenshots of Facebook text messages sent
by "Kingk Kingk" aka "Cedric Robinson / King Messiah" to Y.O.R., which were

14

inventoried as ATF Item #1. E.T. also stated he was able to save two Facebook voice messages sent by "Kingk Kingk" to Y.O.R. at approximately 2:00PM on January 30, 2022. E.T. said he forwarded the voice messages from the Facebook account for Y.O.R. to his own Facebook account under the name "Piculing Ortiz (Enste)". E.T. played the Facebook voice messages for ATF. Investigators recorded the Facebook voice messages and inventoried the recording as ATF Item #2. E.T. said he believes that Cedric Robinson did not know he was recording the message based on the statement at the end of the message. Y.O.R. was logged into her Facebook account on E.T.'s cellphone because she didn't have her own cellphone. The following is a summary of the Facebook voice message sent by "Kingk Kingk" to Y.O.R. on January 30, 2022, and forwarded by E.T. to his own Facebook account for preservation:

(Male voice)

> *"...motherfucker think they can get over on me, or play me, or do me man, or misuse me... I don't play that shit... I'll get my payback one way or another... why do you think a nigga posted right now... the next individual motherfucker think they love, that's who you do... just stay parked right here..." (*sounds of vehicle traffic can be heard in the background of the audio*) "...who was that? Who was that?... no, that's some other bitch...this is hilarious... all I did was show love... and motherfucker show nothing but hate back... and trusting and believing and loving trick-ass niggas that pay for pussy... like they going to save her... my patience is running thin... I'm going to make a motherfucker crocodile tears... if I can't catch a motherfucker right now... with this next move... what? What was recording?"*

 (The audio recording then abruptly stopped).

36.     E.T. stated Y.O.R. had previously contacted him using Cedric Robinson's cellphone number (414) 275-2187. E.T. said Y.O.R. had told him that Cedric Robinson would beat her, and she would occasionally contact E.T. to pick her up from the apartment building located at 2600 West National Avenue. E.T. stated he convinced

15

Y.O.R. to get away from Cedric Robinson by traveling to Florida. E.T. said he drove Y.O.R. to stay with her family in Florida on or about January 5, 2022. E.T. further said Y.O.R. accidentally called Robinson from E.T.'s unblocked cellphone while they were traveling to Florida and that is how Robinson learned of his cellphone number.

37.     E.T. provided screenshots of the text message history on his cellphone with phone number (414) 275-2187. Those screenshots were inventoried as ATF Item #3. The text history is depicted below. E.T. stated you can tell when Y.O.R. was using the cellphone versus Robinson based on the tone of the text message.



Case 2:22-mj-00856-NJ   Filed 02/24/22   Page 23 of 45   Document 1



Case 2:22-mj-00856-NJ   Filed 02/24/22   Page 24 of 45   Document 1



Case 2:22-mj-00856-NJ   Filed 02/24/22   Page 25 of 45   Document 1



Case 2:22-mj-00856-NJ   Filed 02/24/22   Page 26 of 45   Document 1



Case 2:22-mj-00856-NJ   Filed 02/24/22   Page 27 of 45   Document 1



38. E.T. stated that he had driven Y.O.R. to Florida on January 5, 2022, and she stayed in Florida for about 3 weeks and had even started a job. However, E.T. said Y.O.R. informed him at some point that she was flying back to Milwaukee on January 26, 2022, on Spirit Airlines. E.T. further said it was difficult for Y.O.R. to stay away from

22

Milwaukee because Milwaukee is where her young children are being raised by her

mother. E.T. further said Y.O.R. is not allowed to see her children. E.T. stated Y.O.R.'s

flight landed at approximately 12:36PM on January 26, 2022, in Milwaukee. E.T. also

said Y.O.R. would not tell him who paid for her plane ticket, but he assumed that

Robinson had paid for the ticket.

39.     E.T. said Y.O.R. called him on January 26, 2022, to pick her up from

Robinson's apartment building located at 2600 West National Avenue. E.T. asked why

she was at that location, and she informed him that she stopped at 2600 West National

because that is where she had left her only winter coat. E.T. stated that Y.O.R. told him

that she intended to live with E.T. and start a new life. E.T. further said Y.O.R. even

later showed him the paperwork she completed to obtain a Wisconsin ID using his

address.

40.     When E.T. pulled up to 2600 West National Avenue on January 26, 2022,

he stated that he watched Y.O.R. walk out of the building with Cedric Robinson

following behind her. E.T. further said Ortiz-River jumped into the front passenger seat

of his vehicle and told him to quickly drive away. E.T. stated that Y.O.R. told him that

she lied to Cedric Robinson by telling him that she was going outside to get money

from a previous prostitution customer. E.T. further said Robinson had previously seen

E.T. drive E.T.'s blue Jeep.

41.     E.T. stated that he began getting multiple phone calls from Robinson after

he picked Y.O.R. up on January 26, 2022, which he mostly ignored. E.T. said he also

received the above featured text message from Robinson at approximately 4:19PM on

that same date in which Robinson called E.T. an "amateur" for his "dip" into a

"professional business."

42.     E.T. also said he believed Robinson was parked on his street when he sent the following text message to E.T. at approximately 1:50AM on January 27, 2022: "I'm out here"

43.     E.T. stated that he and Y.O.R. were watching Netflix in his bedroom during the evening hours of January 30, 2022, when they both fell asleep. E.T. stated he woke up around midnight to find Y.O.R. reading a Facebook message on her Facebook account on E.T.'s cellphone from "Kingk Kingk" (Robinson). E.T. said the message from Robinson told Y.O.R. that she could not hide and would eventually be caught by Robinson. E.T. also said the message included a veiled threat to Y.O.R.'s family by saying what she was doing could impact them. E.T. said Y.O.R. was visibly upset and he tried to console her. E.T. further said he subsequently fell back asleep and later woke up at approximately 7:00AM and Y.O.R. was gone. E.T. said he immediate drove around the area and located Y.O.R. walking in an alley. E.T. said Y.O.R. asked to be driven to the area of Burnum and 10th Street so she could walk to a friend's house. E.T. stated he did not see which house she walked into, if any at all. E.T. said he has not seen Y.O.R. since that day.

44.     E.T. also showed investigators his call log from January 31, 2022, when he had received a call from (414) 275-2187 at 11:09AM. E.T. said he answered the phone and it was Y.O.R. who started to talk but then stopped because he heard Robinson in the background asking her why she called when he was still telling her what to say. E.T. further said Y.O.R. sounded like she was crying and hung up the phone. E.T. stated he called back but no one answered. E.T. said Y.O.R. subsequently called him

24

back and asked to be picked up but he told her he could not because he was at work.

E.T. said that he had a feeling that Robinson was trying to set him up because Robinson knew E.T. carried a handgun with a concealed carry permit. E.T. stated that Y.O.R. had previously told E.T. that Robinson had wanted her to steal E.T.'s handgun for Robinson.

45.      E.T. said that he received a call from (414) 275-2187 at 5:00PM on January 21, 2022, but he did not answer the call. E.T. further stated he called the number back at 5:14PM and Robinson answered the call. E.T. said that Robinson told him that Y.O.R. could not talk right now because his penis was in her mouth, and then hung up the phone.

46.      E.T. later provided Agent Hankins information regarding a previous Facebook account used by Y.O.R. under the name "Yarisel Ortiz" [Facebook ID #100055146091393]. E.T. said Robinson has access to this account because Y.O.R. told him that Robinson was using this old account to message her new Facebook account while she was staying in Florida

47.      E.T. later stated he had located a possible online prostitution ad featuring a likely photograph of Y.O.R. on the website skipthegames.eu, with a phone number of (773) 780-3478. The ad was posted for Rockford, IL. E.T. further said the postings for the ad ended on January 5, 2022, when Y.O.R. left for Florida and resumed again on January 26, 2022, when Y.O.R. returned to Milwaukee.

*Identification of "Cedric Robinson" as BOBBY LASHAUN MCNEIL*

48.      On February 3, 2022, ATF Task Force Officer (TFO) Alexis Krusic broadcast a request for assistance to law enforcement agencies in the Milwaukee Metro area. Specifically, TFO Krusic requested assistance identifying a black male known only

as "Cedric Robinson" aka "King Messiah", depicted below, which was inventoried as ATF Item #1.



*Facebook image of "Cedric Robinson" aka "King Messiah"*

49.     New Berlin Police Department Detective Joshua Guavara responded to the request stating that facial recognition software had potentially identified "Cedric Robinson" aka "King Messiah" as Bobby Lashaun MCNEIL (B/M, DOB: 10/18/1979). The facial recognition software had identified a Milwaukee County Jail booking photograph of MCNEIL as 99.8% similar to the image depicted above. The side-by-side images of "King Messiah" and Bobby MCNEIL are depicted below.

(Images depicted below are not positive identifications. They are to be used only as investigative leads)

✚ Organization Filters

 

| Similarity: | 99.8% |
|---|---|
| Identifiers: | Bobby Mcneil (DOB: October 1979) |
| Organization: | Milwaukee County Jail |
| Image Date: | 10/29/2019 |

50. According to Milwaukee County Jail records, Bobby MCNEIL has used the following aliases and nicknames: Messiah Robinson, Robinson Messiah, King Messiah, Cedric Johnson, and Bam Bam.

51. On February 8, 2022, E.T. contacted Agent Hankins and stated he had independently identified Bobby MCNEIL as the black male he knew as "Cedric Robinson" by researching nicknames on the Wisconsin Consolidated Court Automation Programs (CCAP) and then comparing images of old Facebook profiles under the name "Bobby Mcneil".

52.     On February 10, 2022, ATF received records from Spirit Airlines regarding a flight taken by Y.O.R on January 26, 2022. The following is a summary of information provided by Spirit Airlines:

53.     According to the records, Y.O.R. departed on Spirit Airlines flight #1848 on January 26, 2022, at approximately 10:46AM in Orlando, Florida and arrived in Milwaukee, Wisconsin at approximately 12:36PM that same date. The reservations for the flight was made online on January 19, 2022. Payment for the flight ($47.79) was made with a Mastercard in the name of Bobby MCNEIL, 2241 North 16th Street, Milwaukee, Wisconsin. The credit card number was 5396344044000639 with an expiration date of October 2025. The email associated with the reservation was kmessiah97@gmail.com.

54.     Investigators subsequently obtained surveillance video from the apartment building located at 2600 West National Avenue, Milwaukee, Wisconsin. The surveillance video captured images of a female consistent with the likeness and clothing of Y.O.R. accompanied by a black male consistent with the likeness and clothing of MCNEIL. Specifically, the surveillance video showed that Y.O.R. and MCNEIL exited 2600 West National Avenue at approximately 12:36AM on February 1, 2022, and returned to the same building together at approximately 2:43AM on February 1, 2022.

55.     On February 17, 2022, Your Affiant was contacted by E.T. who stated that someone claiming to be Y.O.R. had contacted him from an unknown number and she wished to be picked up at Bodega Laundry located 1724 South 7th Street in Milwaukee, Wisconsin. ATF and the Milwaukee Police Department subsequently conducted surveillance at Bodega Laundry. At the direction of ATF, E.T. parked his vehicle at the

28

Bodega Laundry at approximately 2:18PM on February 17, 2022. Shortly after E.T. parked his vehicle, investigators witnessed a female that matched the likeness of Y.O.R. run from a building located north of the laundry mat and enter the vehicle's front passenger's seat. E.T. then followed investigators to the Milwaukee Police Department District 2 station. At the police department, investigators informed Y.O.R. that she was not in trouble and that investigators wished to talk to Y.O.R. about how she has been treated. Y.O.R. consented to be interviewed. The following is a summary of the interview of Y.O.R. on February 17, 2022:

56.     Y.O.R. alluded that she had been kept against her will by a black male she knew as "Bobby Cedric MCNEIL". Y.O.R. also said MCNEIL is a drug dealer who sells weed, crack, and heroin. Y.O.R. further said MCNEIL forces her to "sell" herself. Y.O.R. stated that MCEIL advertises Y.O.R. for sex acts on a website called "skipthegames". Y.O.R. said MCNEIL had posted an image of her naked body on the website as recently as the last five days. Y.O.R. stated she calls MCNEIL "Daddy" out of fear. Y.O.R. said MCNEIL advertised Y.O.R. on the website under the name "Young Goddess". Y.O.R. stated that MCNEIL advertised various prices depending on the length of sexual encounters. Y.O.R. further said she had engaged in 5 separate sex acts for money under the direction of MCNEIL since January 26, 2022. Y.O.R. said two of the sexual encounters occurred at 555 South Layton Blvd, Unit 206, Milwaukee, Wisconsin. Y.O.R. also said 3 sexual encounters since January 26, 2022, have occurred at 2600 West National Avenue, Unit 604, Milwaukee, Wisconsin. Y.O.R. said the money for the sex acts are paid by her "dates" directly to MCNEIL, and she is not given any money for her sex acts.

57.     Y.O.R. said that MCNEIL would beat her if she did not follow his

directions.

58.     Y.O.R. stated that she was with MCNEIL at 555 South Layton Blvd, Unit

206, on the evening of February 16, 2022, when she waited for MCNEIL to fall asleep.

Y.O.R. said she was able to flee the apartment after MCNEIL fell asleep.

59.     On February 18, 2022, the United States Marshal Service entered 2600

West National Avenue, Unit #604, pursuant to active state felony warrants for Bobby

MCNEIL and located Lawrence TAYLOR in that residence. TAYLOR stated that "King

Messiah" MCNEIL stays in Unit #604. TAYLOR stated that MCNEIL has keys to Unit

604.

60. The two devices located at 555 S Layton Boulevard #206 were obtained via consent search via L.S., who is the sole occupant on the lease and the only person in the unit that paid rent.

61. L.S. relayed that both devices taken were not hers and that when MCNEIL stayed in her apartment, he slept and stayed in the living room. The living room is where the black jacket was located with the identifiers for MCNEIL and 'Device A' was located on the living room table where MCNEIL was staying when he was arrested.

62. L.S. relayed that the cell phone in her bedroom closet with the pink case, 'Device B', was not hers and did not know who's phone it was. Through a previous interview with Y.O.R., they relayed that MCNEIL had taken their cellphone and they never saw it after that. L.S. also stated that when MCNEIL would stay at her apartment, Y.O.R. would also stay there with him.

63. At 2600 W National Avenue #604, devices C-G, were located and taken by ATF via search warrant.

## **TECHNICAL TERMS**

64. Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and

31

from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

32

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range

33

0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

65. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

66. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

67. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

34

Case 2:22-mj-00856-NJ   Filed 02/24/22   Page 40 of 45   Document 1

the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

68.     *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of Devices A, B, C, D, E, F, and G consistent with the warrant.

69.     *Manner of execution.*   Because this warrant seeks only permission to examine devices already in law enforcement's possession and the electronically stored information previously extracted from the devices, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

70.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of Devices A, B, C, D, E, F, and G as described in Attachment A to seek the items described in Attachment B.

## ATTACHMENT A

The property to be searched is:

a)  A black LG touchscreen cellphone, with cracked screen, with an exterior ID # GPLGL355DCGBZNFL355DL ("Device A");

b)  A black Samsung touchscreen cellphone, with pink phone case and shattered screen (Device B");

c)  A Samsung smartphone, with cracked screen, with IMEI: 355403130674085 ("Device C");

d)  A black Android tablet, model K92, with serial # 320184590083. ("Device D");

e)  A Samsung smartphone with IMEI: 353929592364759 ("Device E");

f)  A Wiko smartphone, model U307AS, with IMEI: 356818682675710 ("Device F");

g)  An Alcatel smartphone, model 5002L, with IMEI: 354302111111490 ("Device G").

Devices A, B, C, D, E, F and G are currently in the custody of the ATF.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## <u>ATTACHMENT B</u>

All records on the Devices described in Attachment A that relate to violations for evidence of violations of Title 18, United States Code, Section 1591 (Sex Trafficking by Force, Fraud, and Coercion); Title 18, United States Code, Section 844(i) – use of fire to damage a building affecting interstate commerce; Title 18, United States Code, 844(h) – use of fire in furtherance of another Federal crime (sex trafficking) to include:

a. The existence, scope, nature, and overt acts in furtherance of the conspiracy and the identity of any co-conspirators;

b. Any information commonly associated with use for commercial sexual activity;

c. Any notes, documents, records, or correspondence, in any format concerning communications between individuals about commercial sex acts or sex trafficking, or advertisements for the same, such as on Skipthegames.com, Backpage.com, and similar websites;

d. Any financial records, including but not limited to ledgers, account books, appointment books, tax returns, tax return information, checks, checkbooks, bank statements, loan records, receipts, bills, invoices, credit card receipts, contracts, leases, and related correspondence in digital form;

e. Indicia of firearms or firearm violations;

f. Indicia of unlawful possession, use, or distribution of controlled substances, including but not limited to paraphernalia and evidence known to be associated with drug trafficking and/or drug possession;

g. Evidence of who used, owned, or controlled the cell phone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

h. Material used in manufacturing suspected incendiary devices (Molotov cocktails), namely Stewart's Orange n' Cream Soda glass bottles, gasoline containers, and cloth material that appears torn;

a. The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between the suspect and others related to the relevant offense conduct in the above-listed crimes; and

b. Evidence indicating the device user's state of mind as it relates to the crime under investigation.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2